UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ARMIDA LOERA, | ) | NO. CV 08-1235 AGR |
| Plaintiff, | ) | |
| v. | ) | |
| MICHAEL J. ASTRUE, | ) | MEMORANDUM OPINION AND ORDER |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

Armida Loera filed this action on February 28, 2008. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge Rosenberg on March 26 and April 23, 2008. On November 13, 2008, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Court has taken the matter under submission without oral argument.

Having reviewed the entire file, the Court affirms the Commissioner's decision.

///
///
///
///

**I.**

## PROCEDURAL BACKGROUND

On September 1, 2005, Loera filed an application for Supplemental Security Income benefits. A.R. 18. The application was denied initially and upon reconsideration. A.R. 50-51. Loera requested a hearing. A.R. 52. An Administrative Law Judge ("ALJ") conducted a hearing on April 16, 2007, at which Loera and a vocational expert testified. A.R. 308-342. On May 25, 2007, the ALJ issued a decision denying benefits. A.R. 15-26. Loera requested review and submitted some additional evidence to the Appeals Council. A.R. 13, 231-301. On December 5, 2007, after having considered new evidence, the Appeals Council denied Loera's request for review. A.R. 7-10.

This lawsuit followed.

**II.**

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

///

# III.

# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

## B. The ALJ's Findings

The ALJ found that Loera had the following severe impairments: lumbar spine degenerative joint disease, right shoulder sprain, and asthma. A.R. 25. Loera had the following residual functional capacity ("RFC"): "lifting and/or carrying 10 pounds frequently and 20 pounds occasionally; sitting for 6 hours total in an 8-hour workday with normal breaks; standing and/or walking for 6 hours total in an 8-hour workday with normal breaks; occasional balancing, kneeling, climbing, crawling, crouching and stooping; and, occasional use of the right upper extremity for fine manipulation." *Id.* She had no past relevant work. *Id.* She had the RFC "to perform a significant range of light work." *Id.* "[T]here are a significant number of jobs in the national economy that she could perform," for example, the jobs of child attendant and furniture rental attendant. *Id.*

## C. Residual Functional Capacity

As noted above, the ALJ found that Loera had the RFC for "lifting and/or carrying 10 pounds frequently and 20 pounds occasionally; sitting for 6 hours total in an 8-hour workday with normal breaks; standing and/or walking for 6 hours total in an 8-hour workday with normal breaks; occasional balancing, kneeling, climbing, crawling, crouching and stooping; and, occasional use of the right upper extremity for fine manipulation." A.R. 25.

On February 11, 2003, Loera was hit by a car while she was walking on the sidewalk. A.R. 20, 111-116.

On October 29, 2005, Dr. Wirganowicz (an examining physician) performed an orthopedic evaluation of Loera. A.R. 118-122. He diagnosed chronic back pain with scoliosis. A.R. 121. Radiographs taken the same day "revealed a slight left-sided lumbar scoliosis. On the lateral view of the lumbosacral spine, there is very slight narrowing of the L5-S1 disc space but otherwise bony alignment is normal." *Id.* Dr. Wirganowicz found full range of motion and a gait within normal limits. A.R. 120. On the basis of his examination and diagnostic testing, Dr. Wirganowicz assessed an RFC less restrictive than the ALJ's. A.R. 122.

An examining physician's opinion may constitute substantial evidence when, as here, it is supported by independent clinical findings. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). Loera argues that the ALJ erred in relying on the examining physician's opinion because there is a subsequent MRI in April 2007 that allegedly shows a deterioration in her condition. Loera argues that the ALJ had a duty to recontact Loera's treating physician, Dr. Hasnain.

In December 2005, Dr. Hasnain began treating Loera. A.R. 21, 141. On December 2, 2005, Hasnain diagnosed Loera with degenerative joint disease of the lumbosacral spine, found mildly decreased flexion and extension, and recommended an MRI. A.R. 141. On December 28, 2005, only two months after the examining physician's opinion, an MRI of the lumbar spine was taken. A.R. 221-222. Dr. Turner, the interpreting radiologist, found "diffuse disc bulges of 3-4 mm at the L3-4, L4-5 and L5-S1 disc levels impinging the L4 and L5 nerve roots bilaterally." A.R. 222; *see also* A.R. 221. Loera continued to see Hasnain through March 14, 2007, albeit with many canceled or "broken" appointments. A.R. 182-220. In July 2006, Loera fell in a market. A.R. 246. As of the last appointment in the record on March 14, 2007, Hasnain diagnosed Loera with
///

degenerative joint disease of the spine and a sprain in her right shoulder. A.R. 182.

On April 4, 2007, another MRI of the lumbar spine was taken at Hasnain's request. A.R. 229-230. Dr. Nastaran found "diffuse spondylotic disc disease of lumbar spine." A.R. 230. Dr. Nastaran's specific findings included "a 6 mm broad based protrusion effacing the anterior thecal sac," "bilateral facet osteoarthritis," "decrease in the AP dimension of central canal to 9 mm," and "mild to moderate bilateral neural foraminal narrowing." A.R. 229. At L4-L5, Dr. Nastaran found "a 4 mm left paracentral disc herniation superimposed on mild bulge," "effacement of the anterior," "impingement on the left transiting nerve root," "AP dimension of central canal measures 1.1 cm,," and "a mild bileteral neural foraminal narrowing." *Id.* At L5-S1, "a 3 to 4 mm broad based protrusion effacing the anterior thecal sac," "extension of the disc protrusion to the foraminal zones left more than right," "bilateral facet osteoarthritis," "central canal is patent," and "a mild to moderate left neural foraminal narrowing." *Id.*

The ALJ found that the April 2007 MRI "revealed diffuse spondylitic disease similar to the previous findings of December 2005 " and "there was little change in the claimant's lumbar spine degenerative joint disease."[1] A.R. 22.

The ALJ found that Dr. Hasnain "did not at any time report that she had any significant impairment-related functional limitations." A.R. 22. Loera does not dispute this finding.

Loera submitted to the Appeals Council her treating chiropractor's records

---

[1] Contrary to Loera's argument, the ALJ did not consult evidence outside the record to conduct his own evaluation of Loera's condition in violation of *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). Loera's attorney at the hearing argued that the 2007 MRI "shows a similar set of problems" as compared to the December 2005 MRI. A.R. 338. On the one hand, at the L3-4 level, the bulging went from 3-4 mm to 6 mm. *Compare* A.R. 221 *with* A.R. 229. On the other hand, the earlier MRI indicates that the L4 and L5 roots were bilaterally impinged, whereas the later one indicates that only the left transiting nerve root was impinged at the L4-5 level. *Id.*

5

for the period August 2006 (after falling in a market) through May 2007. A.R. 246-301. The Appeals Council considered this new evidence and concluded that it "does not provide a basis for changing the Administrative Law Judge's decision." A.R. 8. Given that the Appeals Council considered the new evidence in denying review, this Court also considers that evidence. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1030 n.2 (9th Cir. 2007); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

A chiropractor is not an acceptable source of medical evidence of an impairment. 20 C.F.R. § 404.1513(a), (d)(1). However, evidence from chiropractors may be used "to show the severity of your impairment(s) and how it affects your ability to work." 20 C.F.R. § 404.1513(d)-(e). Here, the records show a "[s]elf-assessed pain rating by patient, on a scale of 0-10 with 0 indicating no symptom present." A.R. 300. Comparing August 2006 to January 2007, the records show that Loera reported a decrease in neck pain from 10 to 2, a decrease in low back pain from 9 to 3, a decrease in right leg pain from 9 to 3, and a decrease in headache from 7 to 0. *Id.* The only area where there was no improvement was in right shoulder pain, which remained constant at 9. *Id.*

Loera argues that the 2007 MRI shows a deterioration of her lumbar spine. However, Dr. Hasnain did not make a finding that Loera's condition had deteriorated. In any event, "the mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir 1993). A claimant must show that she is precluded from engaging in substantial gainful activity by reason of her impairments. *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). It is the claimant's duty to prove she is disabled. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *see* 42 U.S.C. § 423(d)(5)(A) (the claimant must furnish medical and other evidence of her disability).

Loera did not provide evidence from Dr. Hasnain as to her functional limitations at any time, before or after the April 2007 MRI. Nor does Loera

6

explain why she did not submit additional records or an opinion from Dr. Hasnain. The only evidence she presented to the Appeals Council from her chiropractor showed a marked *decrease* in pain with the exception of her right shoulder.

Loera argues that it was the ALJ's duty to recontact her treating physician to find out his opinion on her functional limitations.  However, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 459-60 (citation omitted).  The ALJ did not find that the record was insufficient or inadequate.  As discussed above, Dr. Hasnain's records did not report functional limitations from her impairments at any time. Under these circumstances, the ALJ did not have a duty to recontact Dr. Hasnain. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (no duty to recontact physician whose report was not ambiguous or insufficient).

The ALJ did not err.

### D.     Loera's Credibility

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter*, 504 F.3d at 1035-36.

#### 1.     Step One of the Credibility Analysis

At Step One, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'  The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'  'Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged.'" *Id.* (citations omitted); *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir.

7

1991) (en banc). The ALJ found that Loera "does have a medically determined impairment which could be expected to produce some pain." A.R. 23.

### 2. Step Two of the Credibility Analysis

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

The ALJ made no finding of malingering. "[T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief." *Orn*, 495 F.3d at 635 (citations and quotation marks omitted). "The ALJ must cite the reasons why the claimant's testimony is unpersuasive." *Id.* (citation and quotation marks omitted). In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (en banc) (citing Social Security Ruling 88-13,[2] internal quotation marks omitted). The ALJ may consider (a) inconsistencies or discrepancies in claimant's statements; (b) inconsistencies between claimant's

---

[2] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

The ALJ found that Loera's testimony about the extent, intensity, and duration of her pain was not fully credible for two reasons: (1) she admitted that pain medication helped relieve the pain, and there was no evidence that side effects impaired her ability to work; (2) she was capable of caring for her child, taking care of a pet, cooking, grocery shopping, performing household chores, going to church weekly, handling finances, and helping to care for her mother. A.R. 23.

The ALJ's first reason is supported by substantial evidence. Loera testified that medication makes the pain go away for a while. A.R. 321. The ALJ asked: "Do you have any side effects from these medications?" Loera responded: "No. Little bit drowsiness. That's it. And then I get dehydrated a lot." A.R. 317. Impairments that can be controlled effectively with medication are not disabling for purposes of SSI benefits. *See Warre v. Commissioner of the SSA*, 439 F.3d 1001, 1006 (9th Cir. 2006).

With respect to her daily activities, Loera stated in a report filled out in November 2005 that she takes care of her 15-year-old son. A.R. 77. She cooks breakfast and dinner for him, washes his clothes, and helps him with his studies. A.R. 76-77. She wrote that she takes care of her cat by giving her food and water, emptying the litter box, combing her hair and giving her a bath. A.R. 77. She prepares her own meals daily, and performs some "chores that need to be done" such as laundry and grocery shopping. A.R. 78-79; *see also* A.R. 76. She likes to read, go to the library, paint, and take slow walks in the park. A.R. 80. She goes to church once a week and handles her own finances. A.R. 79-80.

At the hearing, Loera testified that she did housework, including vacuuming, dusting, laundry, washing dishes, making her bed, and cooking. A.R.

1  318-319.  She also did the grocery shopping and took care of her cat.  *Id.*  Loera
2  testified that she helps take care of her mother.  A.R. 315.
3       Loera argues that the ALJ erred in relying on her daily activities because
4  he did not make specific findings that her daily activities translated into an ability
5  to perform work.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[I]f a
6  claimant is able to spend a substantial part of his day engaged in pursuits
7  involving the performance of physical functions that *are* transferable to a work
8  setting, a specific finding as to this fact may be sufficient to discredit an allegation
9  of disabling excess pain.") (emphasis in original).  While it is true that the ALJ did
10 not make express findings, Loera's daily activities in taking care of her son and
11 handling finances are facially relevant to the ALJ's finding that Loera could
12 perform work, for example, as a child attendant or furniture rental attendant.  A.R.
13 24.  Accordingly, the ALJ did not err.

### IV.

### **ORDER**

16     IT IS HEREBY ORDERED that the Commissioner's decision is affirmed.
17     IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this
18 Order and the Judgment herein on all parties or their counsel.

21 DATED:  February 24, 2009

                                ALICIA G. ROSENBERG
                                United States Magistrate Judge